UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRUCE MALCOLM Individually and as trustee for the Revocable Inter Vivos Trust for the benefit of Bruce G. Malcolm, dated March 11, 1996, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| TRILITHIC, INC., TRILITHIC, INC. EMPLOYEE STOCK OWNERSHIP PLAN, HORIZON BANK, N.A. doing business as HORIZON TRUST & INVESTMENT MANAGEMENT; As Trustee for the Trilithic, Inc. Employee Stock Ownership Plan, BENEFITS COMMITTEE For the Trilithic, Inc. Employee Stock Ownership Plan, TERRY BUSH, GREGG RODGERS, JEFFREY HALE, JERI WOODCOCK, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:13-cv-00073-SEB-DKL |
| Defendants. | ) ) | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

This cause is now before the Court on Defendants' (two) Motions to Dismiss

[Docket Nos. 31 and 32], filed on April 15, 2013, pursuant to Federal Rule of Civil

Procedure 12(b)(6). Plaintiff Bruce Malcolm brings this claim against Defendant

Trilithic, Inc., and the Benefits Committee for Trilithic Inc. Employee Stock Ownership

Plan, Terry Bush, Greg Rodgers, Jeffrey Hale, and Jeri Woodcock (collectively, "the

Trilithic Defendants"), as well as the Trilithic, Inc. Employee Stock Ownership Plan

("the Plan") and Horizon Bank, N.A. d/b/a Horizon Trust & Investment Management ("Horizon"), alleging various claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Mr. Malcolm also alleges state law claims for criminal mischief and fraudulent inducement. For the reasons detailed in this entry, both motions to dismiss are <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>.

## Factual Background

Trilithic is an Indiana corporation headquartered in Indianapolis, Indiana, that manufactures and designs customer-directed products for telecommunications, military, and industrial customers. It is a closely held corporation with approximately 132 employees. Plaintiff Bruce Malcolm and Defendant Terry Bush are the co-founders and major shareholders of Trilithic. Malcolm and Bush each owns approximately 35% of Trilithic's outstanding voting stock. Since January 2005, Trilithic has sponsored an employee stock ownership plan ("ESOP") subject to ERISA ("the Plan"). The Plan holds approximately 28% of the Company's voting shares. Defendant Horizon acts as trustee of the Plan. The Company's remaining voting shares are held by various Trilithic employees.

At all times relevant to this litigation, Trilithic's activities were governed and overseen by a three-person board of directors ("the Board of Directors"), which included Malcolm, Bush, and Defendant Gregg Rodgers. Until his removal, Mr. Malcolm was Trilithic's Chief Executive Officer and the Chairman of the Board of Directors. Mr. Bush acted as Trilithic's President and Mr. Rodgers was Vice President of Engineering. In addition to being Trilithic's highest ranking officer and director, Mr. Malcolm also

served on the Plan's Benefits Committee ("the Committee"), which administers the Plan. The members of the Committee are appointed by the Board and traditionally consist of the officers of the Company. In July 2012, the Board of Directors voted to remove Mr. Malcolm as an officer and director of Trilithic. Mr. Malcolm alleges various reasons for his removal, including his alleged discovery of accounting fraud in May 2012.

According to Mr. Malcolm, in late May 2012, as the Company's annual audit was being completed, he learned that a fictitious sale had been included on Trilithic's books and records. Mr. Malcolm contends that he discovered that finished goods ("the Instruments") with a sale price of $175,000 were hidden in Trilithic's machine shop, but that a purchase order created on April 5, 2012, showed a sale of the Instruments to a distributor owned by a friend of Mr. Bush. In the First Amended Complaint, Mr. Malcolm alleges that, rather than being a true sale, the Instruments transaction was placed on Trilithic's books merely to bolster Trilithic's receivables account and profitability in order to present a better record to its lender, who provided a line of credit based on certain factors, including the Company's monthly sales receivables.

Mr. Malcolm proceeded to conduct an investigation into the alleged fictitious sale, and, during the course of his investigation, he approached each of the members of the Committee to inquire about his suspicions. According to Mr. Malcolm, the Committee members (individual defendants Bush, Rodgers, Hale, and Woodcock) either participated in the false sale or subsequently learned about the false sale and failed to take appropriate responsive action. Following his investigation, Trilithic's senior management began

shutting Mr. Malcolm out of decision making and ceased including him in discussions regarding the Trilithic's day-to-day operations.

On July 12, 2012, Mr. Malcolm was informed of an emergency meeting of the Board. Mr. Malcolm was out of state at the time the meeting was held and telephoned into the meeting. During the meeting, Mr. Bush informed Mr. Malcolm that he (Malcolm) was being asked to resign as an officer, director, and employee and that, if he refused, he would be terminated. Mr. Malcolm's removal as officer and director was finalized at the Board's July 24, 2012 meeting.

In late December 2012, Mr. Malcolm provided each of the defendants with a draft complaint for this lawsuit, detailing, among other things, the false sale and allegations that Defendants withheld information obtained from brokers and potential buyers regarding Trilithic's estimated fair market value in order to affect the Company's valuation. Approximately one week later, on January 4, 2013, Trilithic initiated a state court lawsuit against Mr. Malcolm to recover approximately $1 million in loans extended to him by the Company between June 2009 and April 2012. On January 11, 2013, Mr. Malcolm filed the instant lawsuit, alleging, *inter alia*, that, in breach of their fiduciary duties, the Trilithic Defendants falsified Trilithic's books and records and presented false information to their lender, jeopardizing Plan assets and causing the material understatement of Trilithic's value to the detriment of Mr. Malcolm and other Plan participants. According to Mr. Malcolm, the remaining Defendants either participated in the breaches or failed to remedy the breaches after receiving notice. Mr. Malcolm further alleges that when he reported the alleged breaches of Defendants' alleged ERISA

fiduciary duties, he was subject to retaliation in violation of ERISA section 510.  Finally, he alleges state law claims of criminal mischief and fraudulent inducement against Defendant Bush.

On April 15, 2013, the Trilithic Defendants filed a motion to dismiss all claims set forth in Mr. Malcolm's First Amended Complaint.  That same day, the Plan and Horizon filed their own motion to dismiss.  These motions are now fully briefed and ready for ruling.

## **Legal Analysis**

## I.    **Standard of Review**

Defendants have filed their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), the Court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant.  *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).  Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level."  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted).  The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2).  Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.    Discussion[1]

In his First Amended Complaint, Mr. Malcolm alleges the following ERISA claims: (1) denial of benefits claim brought pursuant to 29 U.S.C. § 1132(a)(1)(B) and § 1132(a)(2) (Count II); (2) breach of fiduciary duty claim under 29 U.S.C. §§ 1132(a)(2) and (3), based on allegations regarding a false sale (Count III); and (3) breach of fiduciary duty claim brought pursuant to 29 U.S.C. §§ 1132(a)(2) and (3), based on allegations of withholding of material information; and (4) retaliation claim brought pursuant to 29 U.S.C. § 1140.  We address each of these claims in turn.

### A.    Denial of Benefits Claim (Count II)

In Count II of the First Amended Complaint, Mr. Malcolm alleges that Defendants breached their fiduciary and non-fiduciary duties by "failing to authorize and provide payments to [him] as required under the Plan and ERISA" in violation of ERISA § 502(a)(1)(B).  He seeks both monetary damages as well as any equitable relief the Court deems appropriate under §§ 502(a)(2) and (3), including the removal of fiduciaries.

Defendants maintain that this claim is subject to dismissal on various grounds. First, they argue that, because Count II is a claim for benefits, the Plan is the only proper defendant, and thus the Trilithic Defendants and Horizon must be dismissed.  They further argue that the claim should be dismissed because Mr. Malcolm has failed to exhaust his administrative remedies as required under § 502(a)(1)(B) and is precluded

---

[1] Because Defendants' motions to dismiss raise nearly identical issues and arguments, we address them together.  Any relevant distinctions are noted in our analysis.

from seeking equitable relief (or any other relief) beyond that provided by § 502(a)(1)(B). We address these arguments in turn below.

### 1. Section 502(a)(1)(B)

#### a. Proper Defendant

We turn first to address the issue regarding the proper defendant(s) in a suit for ERISA benefits. "[A] cause of action for 'benefits due' must be brought against the party having the obligation to pay." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013). Thus, "[t]he proper defendant in a suit for benefits under an ERISA plan is … normally the plan itself … because the plan is the obligor." *Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 673 (7th Cir. 2011). But this does not meant that entities other than plans can *never* be proper defendants under § 1132(a)(1)(B). Rather, "'parties other than plans can be sued for money damages under … § 1132(a)(1)(B) as long as that party's individual liability is established.'" *Larson*, 723 F.3d at 914 (quoting *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011)).

Here, however, Mr. Malcolm has failed to allege a valid legal theory on which to proceed against any of the nonplan defendants on his benefits claim. Unlike other cases in which courts have allowed benefits claims to proceed against nonplan defendants, in the case at bar there is no confusion regarding the structure of the plan or the proper plan to sue. *See, e.g.*, *Leister v. Dovetail, Inc.*, 546 F.3d 875, 879 (7th Cir. 2008) ("[Where] the plan has never been unambiguously identified as a distinct entity, … the plaintiff [may] name as defendant whatever entity or entities, individual or corporate, control the plan."); *Mein v. Carus Corp.*, 241 F.3d 581, 586 (7th Cir. 2001) (allowing plan

administrator to be sued for plan benefits because "the exact relationship" between the administrator and the plan was "not clearly set out").  There is no dispute that the correct plan has been sued here and that any benefit payments due to Mr. Malcolm would be paid from the Plan's trust, not Trilithic's general assets.  Nor is there any allegation in the First Amended Complaint that the individual defendants acted as "obligors" for any benefit payments that were allegedly due to him from the Plan that would make them amenable to suit.  *See Ayotte v. Prudential Ins. Co. of Am.*, 900 F. Supp. 2d 814, 819 (N.D. Ill. 2012) (holding that an individual may be sued for benefits when the individual "acts as an 'obligor' to an ERISA plan beneficiary").  For these reasons, we find that the Plan is the only proper defendant for Mr. Malcolm's benefits claim.  Accordingly, Mr. Malcolm's claim brought pursuant to § 502(a)(1)(B) is dismissed as to the Trilithic Defendants and Horizon.

### b.  Failure to Exhaust Administrative Remedies

The Defendant Plan contends that, even though it is a proper defendant for Mr. Malcolm's benefit claim, Malcolm has failed to state a claim on which relief may be granted because he failed to exhaust his administrative remedies before filing this lawsuit.  Mr. Malcolm does not deny that he failed to pursue administrative remedies before filing this claim, but argues that such a failure does not warrant dismissal because exhaustion in this case would have been futile.

Under well-established Seventh Circuit law, a participant must exhaust a plan's administrative remedies before filing a lawsuit under ERISA.  *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012).  "[C]ourts may excuse a failure

to exhaust administrative remedies 'where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile.'" *Id.* (quoting *Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 361 (7th Cir. 2011)). To satisfy the futility exception, a plaintiff "must show that it is certain that [his] claim will be denied on appeal, not merely that [he] doubt[s] an appeal will result in a different decision." *Smith v. Blue Cross & Blue Shield United of Wisc.*, 959 F.2d 655, 659 (7th Cir. 1992). Whether to require exhaustion is a matter left to the court's discretion. *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996).

Here, Mr. Malcolm does not allege in the First Amended Complaint that exhaustion would be futile in so many words; rather, he claims without further elaboration that exhaustion in this case "is not timely or necessary." First Am. Compl. ¶ 180. However, in his response to the motion to dismiss, Mr. Malcolm points us to his allegations that he was terminated as CEO of the company and stripped of his directorship after investigating allegedly illegal activities led by Committee members, and that, rather than proceed with ERISA corrective actions, Trilithic instead sued him in state court one week after receiving his draft complaint. We agree with Mr. Malcolm that these allegations, coupled with the fact that the parties are currently adversaries in the instant lawsuit, are sufficient at this early stage of the litigation to afford him the opportunity to present evidence consistent with this theory as the facts in this case are further developed. *Cf. Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 405 (7th Cir. 1996) (relying on the fact that at the time the defendant denied the plaintiff her benefits, the parties "were not only adversaries in litigation, but also embroiled in a bitter

dispute over the scope of materials in [the defendant's] files which she was entitled to review," the Court of Appeals held that the plaintiff's allegations were sufficient to bring her claim within the futility exception to the administrative exhaustion requirement).

### 2.    Equitable Relief

In addition to seeking payment of the correct benefit under § 502(a)(1)(B), Mr. Malcolm also alleges that, as a result of Defendants' misadministration of the distributions and unwillingness to properly administer the Plan in accordance with their fiduciary duties, he is entitled to equitable relief under § 502(a)(2) and (3), including, *inter alia*: (1) an accounting of Trilithic's and the Plan's past activities; (2) preparation of independent valuations of the Plan's assets, using all relevant information; (3) removal and/or replacement of fiduciaries; (4) appointment of an independent trustee to replace the current Trustee; and (5) restitution.

### a.  Section 502(a)(2)

Section 502(a)(2) allows "a plan participant to seek 'appropriate relief' pursuant to section 409, which in turn deems a fiduciary liable for, inter alia, 'any losses to the plan' resulting from a breach of the fiduciary's obligations, along with 'such other equitable or remedial relief as the court may deem appropriate.'" *Smith v. Med. Benefit Admins. Group, Inc.*, 639 F.3d 277, 282 (7th Cir. 2011) (quoting 29 U.S.C. §§ 1109, 1132(a)(2)). When a plan participant seeks relief under § 502(a)(2), "a plan participant acts as a representative of the plan, and any relief he obtains 'inures to the benefit of the plan as a whole.'" *Id.* (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985)). Section 502(a)(2) "does not provide a remedy for individual injuries distinct

from plan injuries…." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008). Thus, Mr. Malcolm has no viable claim for relief under § 502(a) which is aimed at a recovery for his individual injury as opposed to relief for losses suffered on behalf of the entire Plan. However, it is not clear at this early stage in the litigation that all of the equitable relief Mr. Malcolm seeks, such as removal of fiduciaries, would necessarily be foreclosed under § 502(a)(2); thus we cannot say with certainty at this time that Mr. Malcolm could prove no set of facts that would entitled him to appropriate equitable relief under this section.

**b. Section 502(a)(3)**

Section 502(a)(3) "allows for the recovery of 'other appropriate equitable relief,' including potentially recovery from non-fiduciaries, … but only to the extent that such relief is not available under [Sections 502(a)(1)(B) and 502(a)(2)]." *Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) (internal citation omitted). It is not clear from the pleadings what relief Mr. Malcolm may be seeking for his denial of benefits claim that would not be available to him under other the other ERISA sections. Accordingly, Mr. Malcolm has failed to adequately allege a viable claim for relief under § 502(a)(3) with regard to Count II.

**B.    Breach of Fiduciary Duty Claim (Count III)**

Count III of the First Amended Complaint is a claim brought under ERISA for breach of fiduciary duty based on Defendants' involvement in connection with the alleged "false sale." The First Amended Complaint alleges that Defendants recorded a sale of goods in Trilithic's accounting records to "puff up Trilithic's receivables account

and profitability … to present a better record to PNC Bank … Trilithic's lender, who provided a line of credit that was limited based on factors including Trilithic's monthly sales receivables." First Am. Compl. ¶ 53. According to the First Amended Complaint, recording a false sale "would render the monthly financial statements false and the submission to PNC a fraudulent act, all of which would place Trilithic in default of its lending agreement." *Id.* ¶ 54. Mr. Malcolm alleges that such a default "would impair the continuing viability of the company" and "conceivably would cause the loss not only of Malcolm's investment (as a shareholder), but he and the Plan Participants risked a loss of their benefits under the Plan." *Id.*

The Trilithic Defendants first argue that their alleged actions in connection with the "false sale" cannot be the basis for a breach of fiduciary duty claim because such actions were unrelated to plan administration and their conduct did not otherwise implicate ERISA. *See, e.g.*, *Fletcher v. Kroger Co.*, 942 F.2d 1137, 1139 (7th Cir. 1991) ("'ERISA permits employers to wear two hats, and … they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA.'") (quoting *Belade v. ITT Corp.*, 909 F.2d 736, 738 (2d Cir. 1990)). However, while the Trilithic Defendants contend that the alleged fraudulent misconduct related to the false sale involves misconduct only in their roles as officers and directors of Trilithic, not in their function as Plan administrators, that, in our view misapprehends Mr. Malcolm's claim. The basis of Mr. Malcolm's ERISA claim is not an attempt to recover for the fraudulent sales and accounting activity as such, but rather to vindicate his interests and entitlements that are

derivative of the Plan, knowing that the Plan's investments may have been impaired by the fraudulent acts of the individual defendants, acting as fiduciaries, when they failed to take any steps to investigate whether continuing to invest in Trilithic stock was a prudent decision. Such a claim does implicate Defendants' fiduciary status, and thus, is not subject to dismissal on that basis.

Count III fails for another reason, however. Mr. Malcolm claims that Defendants had an obligation to investigate his allegations regarding the false sale to determine whether the Plan's continued investment in Trilithic stock was consistent with their duty of prudence and if possible to correct the fraudulent activity. It is well-established under Seventh Circuit law that "ERISA imposes no duty on plan fiduciaries to continuously audit operational affairs." *Pugh v. Tribune Co.*, 521 F.3d 686, 700 (7th Cir. 2008). A fiduciary's duty to investigate "only arises when there is some reason to suspect that investing in company stock may be imprudent – that is, there must be something akin to a 'red flag' of misconduct." *Id.* (citations omitted). Here, Mr. Malcolm alleges that the Trilithic Defendant's own knowledge of their involvement in the "false sale" and the effect it could have on Trilithic's relationship with its lender as well as his reports to them of his concerns after discovering the allegedly fraudulent activity, triggered their duty to investigate whether the continuation of investing in Trilithic stock was a prudent investment for the Plan. The problem here is that there is no allegation in the First Amended Complaint that the fraudulent sale had any negative impact on the Plan's investment in Trilithic such that it would amount to a "red flag" signaling the imprudence

of continuing to invest in Trilithic stock. Accordingly, Mr. Malcolm has failed to state a claim on which relief can be granted based on a theory of imprudent investment and Count III is thus dismissed as to all Defendants.

### C. Breach of Fiduciary Duty Claim (Count IV)

Mr. Malcolm alleges in Count IV that Defendants breached their fiduciary duties under ERISA by withholding material information regarding Trilithic's valuation from both the appraiser who prepared Trlithic's annual valuation and the Plan Participants. Specifically, Mr. Malcolm alleges that Defendants Bush and Hale withheld "information concerning fair market value obtained from brokers and potential buyers" from the appraiser, which Mr. Malcolm asserts resulted in the Plan being valued at one-third of its true fair market value. Mr. Malcolm alleges that, because the Plan engages the valuation company to value the Trilithic stock in order to ensure correct Plan distributions, the improper valuation caused payments made to Plan participants to be depressed. According to Mr. Malcolm, this information was also withheld from the Plan Participants, thereby leaving them without accurate information as to the true value of their shares.

The Trilithic Defendants argue that Count IV fails to state a claim because Mr. Malcolm fails to allege any legal basis on which to conclude that Mr. Bush's and Mr. Hale's alleged failure to disclose information about potential offers to buy Trilithic to the firm that determined the Company's fair market value constitutes misconduct. Specifically, the Trilithic Defendants argue that neither Mr. Bush nor Mr. Hale was

required to inform the valuation company about inquiries from potential buyers, and Mr. Malcolm has failed to explain why or how such information regarding potential offers to purchase the company would have affected the calculation of Trilithic's fair market value.

Under ERISA, "material facts affecting the interests of plan participants or beneficiaries must be disclosed." *Kamler v. H/N Telecommunication Servs., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002). While facts may be developed as this case progresses to establish that the information allegedly withheld by Mr. Bush and Mr. Hale would have been immaterial to the valuation firm in reaching its fair market value finding, at least at this stage in the litigation, Mr. Malcolm has adequately alleged that such information "would impact the Valuation Company's valuation opinion of the Trilithic common stock held by the Plan." First Am. Compl. ¶ 97. Thus, we cannot say, at least at this early juncture, that Mr. Malcolm can prove no set of facts that would entitle him to the relief he seeks in Count IV. Accordingly, Count IV against Defendants Bush and Hale survives dismissal.

Count IV is dismissed as to all other Defendants, however. Mr. Malcolm failed to allege that any other members of the Committee were involved in the nondisclosure of material information to the valuation company regarding Trilithic's true value. Nor has Mr. Malcolm adequately alleged that the Plan and Horizon are liable as co-fiduciaries. The only allegations regarding either party are stated in conclusory fashion, asserting "on information and belief" that Horizon "was aware of discussions with brokers and potential buyers" but failed to ensure that the valuation company "was

fully informed of the relevant facts."  First Am. Compl. ¶ 100.  Such cursory allegations are insufficient to meet even the liberal Rule 8 pleading standard.  Accordingly, Count IV is dismissed as to the Plan and Horizon.

### D.    Retaliation Claim (Count V)

Section 510 of ERISA makes it unlawful, *inter alia*, "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or ERISA] … [or] because he has given information or has testified or is about to testify in an inquiry or proceeding relating to [ERISA]."  29 U.S.C. § 1140.  To establish a case of retaliation under § 510 of ERISA, a claimant must demonstrate a causal connection between participation in a statutorily protected activity and any of the illegal conduct described in § 510.

Here, Mr. Malcolm asserts that he has alleged claims for two independent acts of retaliation under Section 510.  First, he alleges that, after he questioned the "false sale" in May 2012, Defendants retaliated against him by removing him from the Board and terminating his employment in July 2012.  Second, Mr. Malcolm alleges that after he sent Defendants his draft complaint in December 2012, alleging ERISA violations and seeking Plan benefits, Trilithic retaliated by filing a lawsuit against him in state court for approximately $1 million the following week to recoup loans extended to him by the Company during his tenure.

### 1.  § 510 Claim Against the Plan and Horizon

The Plan and Horizon argue in their motion to dismiss that they are not proper defendants to Mr. Malcolm's retaliation claims because they have no employment relationship with him and did not file the state court lawsuit against him. As the Seventh Circuit Court of Appeals recently recognized, "the list of prohibited actions is not limited to those capable of being performed by employers; nonemployers can engage in at least some of the acts prohibited by § 510." *Teamsters Local Union No. 705 v. Burlington Northern Santa Fe, LLC*, 741 F.3d 819, 827 (7th Cir. 2014) (citations omitted). Here, however, Mr. Malcolm's § 510 claim based on his investigation of the false sale rests entirely on allegations of removal from the Board and unlawful discharge. Accordingly, this claim cannot go forward against the Plan or Horizon as neither had an employment relationship with Mr. Malcolm and thus had no power to remove him from the Board or terminate him.[2] *See id.* at 827 (dismissing § 510 claim based on allegations of unlawful discharge against entities who had no employment relationship with the plaintiff). Similarly, because neither the Plan nor Horizon was responsible for initiating the state court lawsuit against Mr. Malcolm – which is the adverse action that is the subject of his § 510 claim based on the sending of his draft complaint – that claim is dismissed against those defendants.

---

[2] Mr. Malcolm argues that although neither the Plan nor Horizon made the decision to terminate him, they can nevertheless be held liable under § 510 because they participated in the discharge. However, the evidence Mr. Malcolm cites to support this argument, to wit, a letter from Horizon, the Plan's trustee, stating that it supported the decision to remove Mr. Malcolm, does not show that Horizon participated in the decision to terminate. Such tangential involvement with the termination decision is insufficient as a matter of law to establish liability. *See Baer v. Masonite Corp.*, No. 3:11cv124, 2011 WL 3806279, at *4 (N.D. Ind. Aug. 29, 2011) ("[A] benefits administrator's mere tangential involvement with the termination decision is not sufficient as a matter of law to establish a joint employer relationship.").

## 2. § 510 Claim Against Trilithic Defendants

With regard to Mr. Malcolm's retaliation claim based on his inquiry regarding the false sale allegations, Malcolm argues that he engaged in protected activity when he questioned Defendants Bush, Rodgers, Hale, and others about the "false sale" because in doing so, he was "giving information" in "an inquiry" related to ERISA. For the reasons detailed *supra*, in Part B, we find that Defendants' actions relating to the "false sale" do not constitute a breach of their fiduciary duties. Mr. Malcolm argues that merely because the court may find (as we have) that the facts surrounding the "false sale" and corresponding accounting discrepancies do not constitute a violation of any ERISA fiduciary duty, that necessarily means his inquiry does not constitute protected activity under ERISA. It is true that an employee need not necessarily be correct in his grievance for it to be considered protected activity under § 510. *George v. Junior Achievement of Cent. Ind., Inc.*, 694 F.3d 812, 817 (7th Cir. 2012). However, the grievance must be "plausible" as § 510 does not protect employees who make "insubstantial" complaints. *Id.* Mr. Malcolm argues that, here, while he may have been incorrect in his assertions that the Trilithic Defendants breached their fiduciary duties, his inquiry was nevertheless plausible, and thus protected under § 510. We disagree for the simple reason that it is not even clear from the allegations in the First Amended Complaint that at the time Mr. Malcolm confronted Defendants Bush, Rodgers, and Hale that he mentioned possible ERISA implications related to the "false sale." Accordingly, we cannot find that Mr. Malcolm has adequately alleged that he engaged in protected activity *under ERISA* when he inquired regarding the "false sale."

Mr. Malcolm also contends that Trilithic retaliated against him when it filed a million dollar lawsuit in state court against him approximately one week after he had sent the Company a draft complaint outlining the same allegations contained in the First Amended Complaint. The Trilithic Defendants rejoin that the state court lawsuit, in which Trilithic is seeking to exercise its rights under several promissory notes it issued Mr. Malcolm and to recover damages incurred as a result of Mr. Malcolm's default on the notes, neither evidences a discriminatory intent to retaliate nor prevents Mr. Malcolm from using any ERISA benefits to which he is entitled, and thus argues that it cannot be the basis for a § 510 claim.

"The emphasis of a Section 510 action is to prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan." *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129 (7th Cir. 1992). Here, the pursuit of a breach of contract claim does not prevent Mr. Malcolm from receiving or using any benefits to which he is entitled. Nor does seeking to recover for a breach of contract in and of itself demonstrate a discriminatory intent to retaliate. There are no allegations set forth in the First Amended Complaint that the state law action is frivolous or otherwise utterly without merit sufficient to raise suspicion of a retaliatory motive. The fact that the state court lawsuit was filed approximately one week after receipt of Mr. Malcolm's draft complaint, without more, is insufficient in this instance to create such an inference. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d

841, 851 (7th Cir. 2008) ("[S]uspicious timing alone rarely is sufficient to create a triable issue.") (Title VII retaliation context) (citation and quotation marks omitted).

For these reasons, Mr. Malcolm's § 510 retaliation claims cannot survive the Trilithic Defendants' motion to dismiss.

### E.       Criminal Mischief Claim Against Defendant Bush (Count VI)

In Count VI, Mr. Malcolm asserts a claim against Defendant Bush under the Indiana Crime Victims Relief Act for criminal mischief, which permits a civil plaintiff to recover against "[a] person who … knowingly or intentionally causes another to suffer pecuniary loss by deception …."  IND. CODE § 35-43-1-2(a)(2).  Specifically, Mr. Malcolm alleges that Mr. Bush falsely represented the reason he wanted an individual added to the Board and also falsely represented his agreement with Mr. Malcolm's retirement plans and his agreement to participate in a sale of Trilithic for market value. First Am. Compl. ¶¶ 197, 199.  As a result of these actions, Mr. Malcolm alleges that Mr. Bush gained "actual and effective control of Trilithic," thereby causing him "pecuniary loss." *Id.* ¶¶ 201-204.  In response, Mr. Bush argues that Mr. Malcolm suffered no "pecuniary loss" as a result of these alleged misrepresentations, and thus, has failed to state a claim for criminal mischief.

"'Pecuniary loss' is considered 'a loss of money, or of something by which money, or something of money value may be acquired.'"  *Veach v. Sheeks*, 316 F.3d 690, 694 (7th Cir. 2003) (quoting *American Leasing, Inc. v. Maple*, 406 N.E.2d 333, 335 (Ind. Ct. App. 1980)).  Here, Mr. Malcolm alleges that among other pecuniary losses, as a result of Mr. Bush's misrepresentations, Malcolm was ousted from the Board and lost his

ability to participate in Trilithic's management. At least at this early stage of the litigation, Mr. Malcolm's allegation that he lost something of value when he lost the ability to participate in the control of the Company, is sufficient to plead a pecuniary loss. Accordingly, Count VI survives Mr. Bush's motion to dismiss.

### F. Fraudulent Inducement Claim Against Defendant Bush (Count VII)

In Count VII, Mr. Malcolm alleges a state law claim for fraud in the inducement against Mr. Bush, alleging that Bush fraudulently induced him to execute a guaranty for Trilithic's debt obligations to PNC Bank. Mr. Bush argues that Mr. Malcolm's fraudulent inducement claim is subject to dismissal because the First Amended Complaint does not allege that he sustained damages as a result of signing the guaranty. We agree. The allegations set forth in Count VII do not demonstrate that Mr. Malcolm has (at least as of yet) sustained any sort of harm in connection with his fraudulent inducement claim.[3] Accordingly, Count VII is dismissed.

### III. Conclusion

For the foregoing reasons, both Motions to Dismiss are <u>GRANTED IN PART</u> and <u>DENIED IN PART</u> as described above. The case will proceed accordingly.

IT IS SO ORDERED.

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Date:    03/31/2014

---

[3] In his response, Mr. Malcolm alleges that his potential loss of credit capacity constitutes a form of damages. However, there is no such allegation in the First Amended Complaint. Moreover, the case he cites for that proposition, *American Fletcher National Bank & Trust Co. v. Flick*, 252 N.E.2d 839, 845-46 (Ind. Ct. App. 1969), is inapposite as it addresses a situation in which a bank wrongfully dishonors its customer's business check, which is not an issue in this case.

Distribution:


Kandi Kilkelly Hidde
BINGHAM GREENEBAUM DOLL LLP
khidde@bgdlegal.com

David K. Herzog
FAEGRE BAKER DANIELS LLP - Indianapolis
david.herzog@faegrebd.com

Matthew Thomas Albaugh
FAEGRE BAKER DANIELS LLP - Indianapolis
matthew.albaugh@faegrebd.com

Munjot Sahu
FAEGRE BAKER DANIELS LLP - Indianapolis
munjot.sahu@faegrebd.com

Philip John Gutwein, II
FAEGRE BAKER DANIELS LLP - Indianapolis
philip.gutwein@FaegreBD.com

Scott J Stitt
JAMES E. ARNOLD & ASSOCIATES, LPA
sstitt@arnlaw.com

David E. Wright
KROGER GARDIS & REGAS LLP
dew@kgrlaw.com

Kevin Dale Koons
KROGER GARDIS & REGAS LLP
kdk@kgrlaw.com

Steven E. Runyan
KROGER GARDIS & REGAS LLP
ser@kgrlaw.com